LUTHER E. HALL, Judge pro tem.
Plaintiff, an equipment manufacturer, brought this action to recover from defendant, a mechanical contracting firm, the sum of $1,890.42, being the balance allegedly due plaintiff for certain steel tanks, demineral-ized water tubes and other equipment furnished by it to defendant in accordance with various purchase orders submitted by defendant. The total cost of the equipment amounted to $66,007.00 of which amount defendant paid to plaintiff $64,116.58 leaving a balance due of $1,890.42. Defendant answered admitting the purchase orders and the correctness of plaintiff’s accounting and then pleaded an affirmative defense, contending that defendant was obliged to spend *628 $1,890.42 for labor and materials to put part of the equipment furnished in an acceptable condition.
After trial on the merits the District Judge, being of the opinion that defendant had failed to sustain the burden of proving its affirmative defense, rendered judgment in favor of plaintiff as prayed and defendant appealed.
It is conceded that the sum expended by defendant on the tanks and other equipment amounted to $1,890.42 so that the sole question presented for determination is whether this expenditure was necessitated through any fault of plaintiff.
The equipment involved herein was ordered by plaintiff from defendant in connection with subcontracts defendant had undertaken on two construction 'jobs in Tennessee for account of the Atomic Energy Commission — one at Henderson-ville and the other at Oak Ridge.
Defendant contends that it had to clean and repaint six of the tanks ordered for the Hendersonville job in order to make them acceptable to the government engineers on the job who rejected them because the red lead with which they had been painted by plaintiff had flaked off. in spots due to rust underneath the paint.
Defendant further contends that it had to clean the demineralized water tubes ordered for the Oak Ridge job after they had been rejected by the government engineers as being full of grease; and further that it had to replace the metal straps on a certain piece of equipment ordered from plaintiff because they were of a different metal from that specified. The labor required for the latter item came to $92.20 of the total.
Defendant furnished the specifications and drawings for all equipment and material ordered by it from plaintiff. The specifications in each instance required that the equipment was subject to the approval of “owners and engineers” — the engineers representing the owner being the United States Corps of Engineers. Each purchase order further stated that “The above is to be guaranteed for one (1) year after final acceptance of the job.”
Plaintiff proved that the material and equipment called for by each purchase order was fabricated and otherwise prepared at plaintiff’s plant in Richmond, Virginia, under the supervision of a duly authorized representative of the United States Corps of Engineers, who likewise, in addition, inspected same on the dates of completion and shipment and accepted each order as complying in every respect with the plans and specifications.
Plaintiff further proved that the steel tanks and demineralized water tubes in question were delivered to defendant at the respective job sites and that same were apparently inspected and accepted by defendant who had inspectors on the jobs for such purposes. At any rate both the tanks and the tubes were received by defendant without objection.
Thus plaintiff made out a prima facie case for judgment in its favor and put the burden on defendant of proving its affirmative defense. Ray v. Martin, La.App., 117 So.2d 839; Fairchild Auto Co. v. Reed, 12 Orleans App. 351, LSA-C.C. art. 2232.
The testimony reveals that the six tanks in question were received by defendant at Hendersonville on or about November 30, 1956. There were no complaints with respect to the tanks until approximately four months later at which time defendant notified plaintiff that the government engineer on the job had rejected them.
It was plaintiff’s duty under the plans and specifications to wire brush the tanks and clean them with a solvent to remove the mill scale prior to applying a primer coat of red lead paint. Defendant contends that the wire brushing and cleaning had been improperly done resulting in the red lead scaling off and causing them to be rejected by the government inspector.
*629 Defendant produced only two witnesses, a Mr. O’Neil, its vice-president, and a Mr. Maddry, its treasurer. Mr. Maddry’s testimony was confined to the identification of documents. Mr. O’Neil was defendant’s prime witness but about all that Mr. O’Neil knew about the tanks was that the government had rejected them. He had seen the tanks but once and that was several months after they had been delivered to defendant. He apparently was an office man with headquarters in New Orleans and had very little, if any, direct knowledge of conditions at the job site or how the tanks had been handled and cared for during the four months they were in defendant’s possession. The defendant produced no one with any first hand or direct knowledge of the facts nor was any expert testimony adduced in its behalf.
On the other hand, plaintiff produced the testimony of a Mr. Bryant, its sales manager, who while not a graduate engineer, spoke from 15 years experience in the field. After testifying that the tanks were built and shipped in strict accordance with the plans and specifications, Mr. Bryant stated that the primer coat of red lead was to protect the tanks in shipment and that unless the final coat of paint was put on within thirty days thereafter a scale would develop, as it did here because of the effect of the elements.
We are in complete agreement with the statement of the trial judge that:
“ * * * Since the plaintiff proved prima facie that the tanks were manufactured, treated and delivered as provided by the plans and specifications, and contained no vice or defect due to its improper work or treatment, as certified by the government inspector, the duty then devolved upon the defendant to prove that any defect developing later was due to the initial fault of plaintiff and not to any intervening cause, such as dampness or maltreatment at the Oak Ridge plant, particularly since the tanks were received by its own agent there and it was (sic.) in defendant’s possession for sometime before the government inspectors in Oak Ridge required certain treatment or corrections. * * * ”
And regardless of how much weight is to be given to Mr. Bryant’s testimony, we are of the opinion that defendant has failed to sustain the burden of proving its defense.
Although defendant’s brief contains the statement that the tanks were delivered subject to the final approval of the U. S. Corps of Engineers’ officer at the job site we do not find that the record sustains defendant on that score. Moreover, defendant abandoned the point during argument, and took the position that although the approval by the government inspector at plaintiff’s plant was sufficient, the tanks were rejected under the guaranty clause embodied in each purchase order. It is true that the plaintiff guaranteed to correct any defects within a year, but only defects due to its own fault or negligence, and not to some intervening cause.
All that we have said with reference to the tanks applies with equal force to the demineralized water tubes. Moreover, they were received by defendant a few days after August 16, 1956 and no complaint as to their condition was made to plaintiff until January 29, 1957 when plaintiff was notified that they were dirty from oil and grease and was requested to have them cleaned. As a matter of fact, defendant itself had already cleaned them some three weeks before this notification and plaintiff thus was never given an opportunity to verify the complaint.
Plaintiff concedes that defendant is entitled to a credit of $92.20 for replacing the metal straps.
For the foregoing reasons the judgment appealed from is amended so as to reduce the principal amount thereof to $1,798.22 and as so amended and in all other respects the judgment is affirmed.
Amended and affirmed.